```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


JONES WALKER LLP                          CIVIL ACTION

VERSUS                                    NO: 14-1203

PETAQUILLA MINERALS LTD.                  SECTION: "J" (1)
```

## ORDER & REASONS

Before the Court is Defendant Petaquilla Minerals LTD. (Petaquilla)'s *Motion to Dismiss for Lack of Personal Jurisdiction* **(Rec. Doc. 20)** and Plaintiff Jones Walker LLP (Jones Walker)'s opposition thereto. (Rec. Doc. 25) Having considered the motions and memoranda, the record, and the applicable law, the Court finds that Defendant's motion should be **DENIED** for the reasons set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

This action arises from Jones Walker's alleged representation of Petaquilla in connection with a high-yield debt bond offering and Petaquilla's subsequent failure to pay for the representation. Jones Walker is a limited liability partnership that is organized under the laws of Louisiana. Its principal place of business is in New Orleans, Louisiana. (Rec. Doc. 25, p. 1) Petaquilla is a foreign mining company with its principal place of business in Vancouver, British Columbia, Canada. (Rec. Doc. 20-1, p. 1) Petaquilla has no business office, operations, property, bank accounts, or employees in

Louisiana. (Rec. Doc. 20-2, p. 1) Additionally, Petaquilla does not pay taxes in Louisiana. Id.

In March 2012, Petaquilla engaged Global Hunter Securities, LLC (GHS) to act as its non-exclusive advisor and exclusive placement agent in connection with an offering of approximately $150 million of Petaquilla's high-yield debt instruments. (Rec. Doc. 20-3) GHS then contacted Jones Walker to discuss the possibility of representing Petaquilla in relation to the transaction. (Rec. Doc. 20-1, p. 7; Rec. Doc. 25, p. 3) Thereafter, Jones Walker provided legal services in furtherance of the transaction. (Rec. Doc. 20-2, pp. 2-3; Rec. Doc. 25, p. 5) Jones Walker and Petaquilla were in contact via telephone, email, and at least one in-person meeting in New Orleans, Louisiana, between March 2012 and February 2013. (Rec. Doc. 20-1, p. 8; Rec. Doc. 25, pp. 5-8)

Jones Walker issued invoices for its legal services rendered in connection with the transaction to Petaquilla. (Rec. Doc. 25, p. 10) Petaquilla has not paid the invoices. Id. To date, the unpaid invoices total $516,198.51. Id. When Jones Walker's attempts to collect on the invoices failed, Jones Walker filed suit against Petaquilla in this Court on May 27, 2014. (Rec. Doc. 1; Rec. Doc. 25, pp. 10-11) Petaquilla did not answer the complaint until after the Clerk's entry of default (Rec. Doc. 9) and Jones Walker's motion for default judgment.

2

(Rec. Doc. 10) In the answer, Petaquilla asserted a number of defenses, including this Court's alleged lack of personal jurisdiction over Petaquilla. (Rec. Doc. 11, pp. 1, 5)

On November 3, 2014, Defendant filed the instant *Motion to Dismiss for Lack of Personal Jurisdiction*. **(Rec. Doc. 20)** Plaintiff opposed the motion on December 9, 2014. (Rec. Doc. 25) Defendant did not file a reply.

## PARTIES' ARGUMENTS

Petaquilla argues that this Court lacks personal jurisdiction because Petaquilla has insufficient contacts with the State of Louisiana. (Rec. Doc. 20-1) Petaquilla argues that it lacks any ongoing contacts with Louisiana and did not contract with Jones Walker. Id. at 6-7. Even if the Court were to find that Petaquilla contracted with Jones Walker for legal services in relation to the transaction, however, Petaquilla contends that the contract is insufficient to support personal jurisdiction here. Id. at 7-9.

First, Petaquilla asserts that it lacks both ongoing contacts with Louisiana and privity of contract with Jones Walker. Id. at 6-7. Petaquilla lacks ongoing contacts with Louisiana because it is a foreign corporation; incorporated in Canada; has no business office, operations, property, employees, or bank accounts in Louisiana; and does not pay Louisiana taxes. Id. at 6. Further, Petaquilla did not contract with Jones

3

Walker. Petaquilla stresses that it contracted with GHS, a New York limited liability company, through GHS' New York office. Id. at 6. Petaquilla negotiated and entered the contract in New York. Id. at 6-7. The contract contains a New York choice of law clause and mandates arbitration before a single arbiter in New York City. Id. at 7. Petaquilla further stresses that GHS retained Jones Walker to act as GHS' counsel in accordance with a provision of this contract that states, "The fees and expenses of GHS' U.S. Counsel, up to a limit of $600,000, shall be billed directly to and paid direct by [Petaquilla]." Id. (quoting Rec. Doc. 20-3, p. 2)(emphasis omitted). Thus, Petaquilla's lack of contacts with Louisiana precludes this Court from exercising personal jurisdiction over it.

Second, even if this Court were to find that Petaquilla contracted with Jones Walker, Petaquilla argues that such contract would not support personal jurisdiction here. Id. at 7-9. Petaquilla states that contracting with a member of the forum state is insufficient to support personal jurisdiction in the forum state even when the lawsuit relates to the contract. Id. at 4. Rather, in such cases, a court must find that the defendant purposefully availed itself of the laws of the forum state to exercise personal jurisdiction. See id. at 5-6, 7-8. Here, Petaquilla maintains that the alleged contract relates to one transaction and does not involve a continuing relationship

4

with Louisiana. Id. at 7. The work that Jones Walker alleges it completed under the contract related to regulatory securities filings for securities in New York. Id. at 8. Additionally, Petaquilla asserts that it did not participate in the alleged contract negotiations. Id. Further, Petaquilla alleges that most of its communications with Jones Walker occurred through GHS at meetings that GHS hosted. Id. The direct communications between Jones Walker and Petaquilla occurred as a result of these meetings. Id. Most communications occurred in New York. Id. Petaquilla's representatives traveled to Louisiana only once in connection with the transaction to attend a meeting at GHS' request, which meeting was held at GHS' office. Id. GHS similarly invited Jones Walker to attend the meeting. Id. In support of these assertions, Petaquilla provides an affidavit from Richard Fifer, Executive Chairman of the Board of Directors of Petaquilla. (Rec. Doc. 20-2, pp. 1-3) According to Petaquilla, its alleged contacts with Louisiana fail to show that it purposefully availed itself of the laws of Louisiana and, therefore, are insufficient to support personal jurisdiction in this case.

Jones Walker counter argues that it has met its burden of establishing a prima facie case that the Court properly may exercise personal jurisdiction over Petaquilla in this case. (Rec. Doc. 25) Jones Walker asserts that Petaquilla has

sufficient contacts with the forum state and exercising jurisdiction over Petaquilla would not offend traditional notions of fair play and substantial justice. Id. at 13-20. Alternatively, Jones Walker argues that this Court should defer ruling on the motion until trial because the jurisdictional issue is intertwined with the substantive breach of contract claim. Id. at 20-23.

Jones Walker contests Petaquilla's assertion that there was no privity of contract between the two parties. Jones Walker asserts that Petaquilla agreed to engage Jones Walker for legal services in relation to the transaction. (Rec. Doc. 25-1, p. 3) Jones Walker further insists that its attorneys notified Petaquilla of the firm's standard billing practices, the applicable bill rates, and of the fact that they would perform all work in relation to the transaction in New Orleans. Id. at 3-4. Petaquilla did not object to any of the many communications and documents listing Jones Walker as Petaquilla's U.S. counsel. Id. at 3-7. Jones Walker provides an affidavit from a partner who worked with Petaquilla on the transaction, John Marshall Page, III, who swore to the veracity of the foregoing information. Id. Jones Walker also provides an affidavit from Gary Meringer, General Counsel of GHS, which affidavit tends to corroborate these allegations. (Rec. Doc. 25-2) Finally, when Jones Walker contacted Petaquilla regarding the overdue

6

invoices, Petaquilla did not question the representation. See (Rec. Doc. 25, p. 10-11; Rec. Doc. 25-1, pp. 7-8). Jones Walker reasons that these circumstances evince a contractual relationship between the parties.

Jones Walker further argues that Petaquilla's contacts with Louisiana in relation to this contract support personal jurisdiction over Petaquilla for the claims asserted, which arise from the contract. Jones Walker's lawsuit "[arises] directly from Petaquilla's engagement of Jones Walker, a Louisiana organized and Louisiana-based business." (Rec. Doc. 25, p. 14) Petaquilla knew that Jones Walker would perform its obligations under the contract in Louisiana. See id. at 17. Representatives of Petaquilla sent Jones Walker "approximately 682 emails" relating to the transaction between March 2012 and February 2013. (Rec. Doc. 25-1, p. 4) Representatives of the two entities exchanged a total of "approximately 1,031 emails" relating to the contract in that period. Id. Also in that same period, Jones Walker, Petaquilla, and Petaquilla's Canadian counsel participated in forty-three telephone conferences to discuss the transaction and an additional thirty telephone conferences with GHS and Proskauer. Id. at 5. Finally, Petaquilla representatives attended meetings in New Orleans to discuss the Offering Memorandum for the transaction with Jones Walker and GHS. Id. at 6; Rec. Doc. 25-5, p. 5. The engagement

7

and aforementioned communications incited more than 1,550 hours of work on the part of Jones Walker's attorneys, "including reviewing thousands of pages of Petaquilla's confidential financial information, conducting due diligence, engaging in multiple office conferences and drafting, revising and finalizing offering memoranda." (Rec. Doc. 25-1, p. 6)

Next, Jones Walker argues that exercising jurisdiction over Petaquilla would not offend traditional notions of fair play and substantial justice. (Rec. Doc. 25, pp. 19-20) Jones Walker insists that it would not be burdensome for Petaquilla to litigate Jones Walker's claims in Louisiana. Such an outcome was foreseeable from Petaquilla's many contacts with Louisiana. Modern methods of communication and transportation ameliorate the burden of U.S. litigation for Canadian corporations. Id. at 20. Jones Walker further stresses Louisiana's "strong interest in protecting its citizens from injuries sustained in [Louisiana] as a result of a party's breach of a Louisiana contract with a Louisiana resident." Id. Finally, Jones Walker's witnesses from both Jones Walker and GHS are located in Louisiana. Consequently, "traditional notions of fair play and substantial justice support jurisdiction over the nonresident defendant in this case." Id.

Lastly, Jones Walker argues that, if the Court retains any doubt over whether it properly may exercise personal

jurisdiction over Petaquilla, the Court should defer ruling on jurisdiction until trial because the jurisdictional issue is intertwined with the substantive claims. (Rec. Doc. 25, pp. 20-22) Petaquilla's interactions with Jones Walker throughout the transaction will be of "critical importance" in determining whether Petaquilla is liable to Jones Walker for attorneys' fees. Id. at 20. The Court must consider these same interactions here to determine the issue of personal jurisdiction. Id. at 21. Thus, it is proper to delay consideration until trial if necessary. Id. at 21-22.

## LEGAL STANDARD

The Fifth Circuit has stated the legal standard by which a district court must adjudicate a motion to dismiss for lack of personal jurisdiction:

> Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir.1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. Id. This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. Id.
>
> The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic

> general business contacts" with the forum state, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. Id. at 414, 104 S. Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." Id. at 414, 104 S.Ct. 1868 n. 8. . . .
>
> A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316, 66 S. Ct. 154. In Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir. 2002), we consolidated the personal jurisdiction inquiry into a convenient three-step analysis: "(1) whether the defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." Id. at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985)). The forum state may create, and this court would be bound to apply, additional jurisdictional restrictions by statute, Adams, 220 F.3d at 667, but Louisiana's "long-arm" statute extends jurisdiction to the constitutional limit, La. R.S. 13:3201(B), so the two inquiries in this case fold into one.

Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (footnotes omitted).

## **DISCUSSION**

To determine whether Petaquilla's conduct satisfies the constitutional requirements for specific jurisdiction, the Court

10

begins by examining whether Petaquilla has "purposely avail[ed] itself of the privilege of conducting activities [in Louisiana], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The mere fact that the nonresident defendant contracted with the resident plaintiff is insufficient to support specific jurisdiction. Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007). "Rather, in a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999)(quoting Burger King Corp., 471 U.S. at 479). "[W]hen a nonresident defendant takes 'purposeful and affirmative action,' the [foreseeable] effect of which is 'to cause business activity . . . in the forum state,' such action by the defendant is considered a 'minimum contact' for jurisdictional purposes." Miss. Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1007 (5th Cir. 1982)(quoting Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co., 653 F.2d 921, 923 (5th Cir. 1981)).

"The place of performance is a 'weighty consideration,' even though it is not 'automatically determinative' of personal jurisdiction." Lansing Trade Grp., LLC v. 3B Biofuels GmbH &

11

Co., KG, 612 F. Supp. 2d 813, 822 (S.D. Tex. Apr. 27, 2009)(citing Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 874 (5th Cir. 1999)). This is so when the nonresident defendant "actively engaged in the plaintiff's contractual activities that took place in [the forum state]." See id. at 827 (synthesizing the U.S. Court of Appeals for the Fifth Circuit's case law analyzing personal jurisdiction in breach of contract claims). However, "[a] plaintiff's unilateral decision to perform its part of the contract in the forum state diminishes this factor's weight." Id. at 822 (citing Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc., 963 F.2d 90, 94 (5th Cir. 1992)). For example, in Mississippi Interstate, the Fifth Circuit held that a Mississippi court had personal jurisdiction over a California freight broker because of the substantial nature of the contract. 681 F.2d 1003. The trucking company, Mississippi Interstate, contacted the freight broker, Transpo, at its California office, and their "discussion led to an oral agreement by which Mississippi Interstate would supply trucks to move goods for Transpo on an open account basis." Id. at 1005. During the next two months, Transpo called Mississippi Interstate at its Mississippi office to order its trucking services. Id. Mississippi Interstate had to contact its drivers from its Mississippi establishment to direct their activities in accordance with Transpo's orders. Id. None of Transpo's freight

12

orders involved shipments to or from Mississippi. Id. Although the agreement did not clarify that Mississippi Interstate would service its trucks in Mississippi, the court found that the agreement "reasonably contemplated" such a result because the trucking company's sole establishment was in Mississippi. Id. The Fifth Circuit held these contacts sufficient to satisfy the minimum contacts requirement because Transpo was an active customer that ordered and directed shipments continuously over two months with the knowledge that such orders would cause activity in the forum state of Mississippi. See id. at 1011.

Here, the Court finds that Jones Walker has established the requisite prima facie showing of this Court's jurisdiction over Petaquilla for claims relating to the contract. As an initial matter, the Court notes that it must resolve all of the disputed facts in Jones Walker's favor at this stage. See Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d at 469. Thus, the Court accepts as true the facts as presented in Jones Walker's memorandum and attachments, including the affidavits of Page and Meringer. According to Jones Walker, Petaquilla engaged Jones Walker as its U.S. counsel in relation to the transaction. (Rec. Doc. 25-1, p. 3)

Petaquilla's contacts with Louisiana throughout the transaction are sufficient to support personal jurisdiction here. As in Mississippi Interstate, the nonresident defendant

13

was aware that its actions would cause business activity in the forum state. When Petaquilla contracted with Jones Walker, Jones Walker informed Petaquilla that it would perform all work in relation to the transaction in Louisiana. (Rec. Doc. 25-1, p. 3) Also as in Mississippi Interstate, Petaquilla took an active role in Jones Walker's performance of the contract in the forum state. It would be unreasonable to think that Jones Walker could provide legal advice, especially in relation to such a complex matter, without exchanging information with Petaquilla. The substantial communications between the parties, including a significant portion initiated by Petaquilla, support this conclusion. (Rec. Doc. 25, p. 15; Rec. Doc. 25-1, pp. 4-5) Although the engagement constitutes only one contract, a contract for legal services in relation to a complex financial transaction is no fleeting matter. The substantial number of hours—more than 1,550 of them—that Jones Walker billed during the representation, which lasted from March 2012 to February 2013, evinces this fact.[1] See (Rec. Doc. 25-1, p. 5). Thus, the relationship here exceeds in length that in Mississippi

---

[1] This fact distinguishes the instant case from Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026 (5th Cir. 1983), which Petaquilla relies on in its motion. Hydrokinetics involved a one-time purchase via one purchase order for five waste heat recover silencer units. Id. at 1027. Much of the communications (including the nonresident defendant's visit to the forum state) between the parties occurred before the parties finalized the purchase order, and the nonresident defendant took little to no part in the performance of the contract in the forum state. Id. at 1029. Finally, the purchase order included a choice-of-law provision specifying Alaskan law. Id. at 1027.

14

Interstate by approximately ten months. See Miss. Interstate Express, Inc., 681 F.2d at 1005 (noting that the two companies performed under the contract for only two months). Additionally, although insufficient alone to confer jurisdiction, Petaquilla's representatives' attendance at meetings in the forum state is another factor supporting the Court's jurisdiction here. Thus, the Court finds that Jones Walker has made a prima facie showing of the existence of personal jurisdiction in this case.

Next, the Court must determine "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." See Nuovo Pignone, 310 F.3d at 378. Because Jones Walker asserts claims for breach of contract and suit on an open account in relation to representation described herein, the Court finds that these causes of action clearly arise from Petaquilla's forum-related contacts.

Finally, the Court must examine "whether the exercise of personal jurisdiction is fair and reasonable" in this case. Id. "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). The determination of reasonableness involves the consideration of "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's

15

interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 421 (5th Cir. 1993).

The Court finds that it is reasonable to maintain jurisdiction over Petaquilla here. Petaquilla's motion does not speak to this prong of the analysis. Petaquilla therefore has not met its burden of showing that the assertion of jurisdiction would be unreasonable here. Moreover, the Court is persuaded by Jones Walker's arguments that jurisdiction is reasonable because: Petaquilla's contacts with Louisiana rendered such a result foreseeable, modern methods of communication and transportation ameliorate the burden of litigation in Louisiana, Louisiana's interest in protecting its citizens from injuries sustained in the forum, and Louisiana is the convenient forum for Jones Walker because its witnesses are located in here. See (Rec. Doc. 25, pp. 19-20).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss for Lack of Personal Jurisdiction* **(Rec. Doc. 20)** is **DENIED.**

New Orleans, Louisiana this 13th day of January, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

16