UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


JONES WALKER, LLP                          CIVIL ACTION

VERSUS                                     NO: 14-1203

PETAQUILLA MINERALS, LTD.                  SECTION: J(1)

### ORDER AND REASONS

Before the Court is a *Motion to Stay Pending Arbitration* (**Rec. Doc. 34**) filed by Defendant, Petaquilla Minerals, Ltd. (Petaquilla), and an *Opposition* thereto (**Rec. Doc. 43**) by Plaintiff, Jones Walker, LLP ("Jones Walker"). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

### PROCEDURAL AND FACTUAL BACKGROUND

The facts comprising this matter are largely in dispute. The parties agree that in March 2012, Petaquilla engaged Global Hunter Securities, LLC ("GHS") to act as its non-exclusive advisor and exclusive placement agent in connection with an offering of approximately $150 million of Petaquilla's high-yield debt instruments ("the Transaction"). GHS retained

1

Proskauer Rose LLP ("Proskauer") to act as its legal counsel for matters related to the Transaction.

The exact relationship between Petaquilla and Jones Walker is in dispute. Jones Walker asserts that it was hired by Petaquilla to provide legal advice and representation in relation to the Transaction with GHS. However, in the instant motion, Petaquilla fails to mention this relationship, and instead argues that GHS hired both Jones Walker and Proskauer to serve as its legal counsel regarding the Transaction. Regardless of the exact nature of the relationship between Jones Walker and Petaquilla, Jones Walker billed over 1,550 hours in legal services in connection with the Transaction, and Jones Walker and Petaquilla were in regular contact via telephone, email, and at least one in-person meeting in New Orleans, Louisiana, between March 2012 and February 2013. (Rec. Doc. 43, p. 10).

Jones Walker issued Petaquilla a number of invoices for its legal services rendered in connection with the Transaction, amounting to a total of $516,198.51. (Rec. Doc. 43, p. 13). At the time of the issuance of this Order, Petaquilla has failed to pay for any of the legal services for which it was charged by Jones Walker. When Jones Walker's attempts to collect on the invoices failed, Jones Walker filed suit against Petaquilla in

2

this Court on May 27, 2014. Petaquilla did not answer the complaint until after the Clerk's entry of default (Rec. Doc. 9) and Jones Walker's motion for default judgment. (Rec. Doc. 10). Petaquilla then filed a motion requesting that the Court dismiss the matter, arguing that the Court lacked personal jurisdiction. The Court denied Petaquilla's motion, finding that Petaquilla, as a foreign corporation, had sufficient contacts with the state of Louisiana so as to satisfy personal jurisdiction.

On March 5, 2015, while the present lawsuit was pending, GHS filed a Demand for Arbitration ("the GHS arbitration") against Petaquilla, seeking payment of expenses associated with the Transaction, which it described as "reasonable out-of-pocket expenses … including without limitation the fees, disbursements, and other charges of GHS's counsel." (Rec. Doc. 34-1, p. 3). Petaquilla then filed the instant motion, requesting that the Court stay the present matter pending the outcome of the GHS arbitration, alleging that the facts and claims composing the arbitration proceeding are so similar to those in the present matter that resolution of the present matter would have an irreparable and binding impact on the arbitration proceedings.

## PARTIES' ARGUMENTS

Petaquilla first argues that the Court is mandated pursuant to the Federal Arbitration Act ("the FAA") to stay this matter for the duration of the arbitration between Petaquilla and GHS. As an alternative argument, Petaquilla also asserts that the Court should exercise its discretion to stay the matter due to the substantial similarities between the facts, issues, and defenses raised in the present litigation and the GHS arbitration. Jones Walker, in response, argues that the facts do not warrant either a mandatory or discretionary stay of this matter. Instead, Jones Walker first asserts that because it is a non-signatory to the arbitration clause entered into by Petaquilla and Jones Walker, Petaquilla, as a signatory defendant, cannot invoke a mandatory stay pursuant to the FAA. Jones Walker then contends that even if the Court finds that a mandatory stay may be invoked by a signatory defendant against a signatory plaintiff, a mandatory or discretionary stay is not warranted, because this matter is legally and factually distinct from the GHS arbitration.

## LEGAL STANDARD & DISCUSSION

As an initial matter, it is necessary to clarify the exact relationship between Petaquilla and Jones Walker. In its motion, Petaquilla implies that the extent of its relationship with

Jones Walker was its interaction with the law firm after GHS hired it to work alongside Proskauer and provide GHS with legal representation in matters related to the Transaction. However, Petaquilla's description of this relationship is intentionally misleading. Despite Petaquilla's glaring failure to mention such in the instant motion, the record unequivocally evidences that *Petaquilla*, and not GHS, hired Jones Walker to provide it with legal representation in the Transaction. The engagement letter executed by Petaquilla hiring GHS ("the Engagement Letter") specifically states that Petaquilla would hire independent legal counsel to assist it with legal matters connected to the Transaction, and would not rely on GHS for such services.[1] Moreover, Jones Walker has provided the Court with evidence of numerous communications between Petaquilla, Jones Walker, and others, which state that Jones Walker would be serving as Petaquilla's U.S. Counsel in regard to the Transaction, and none of which were ever disputed by Petaquilla. (Rec. Doc. 43, p. 6-8; Rec. Doc. 43-1, p. 2-3; Rec. Doc. 43-1, p. 10; Rec. Doc. 43-1, p. 34). Further, Jones Walker has provided affidavits in

---

[1] The Engagement Letter provides as follows:

> [Petaquilla] acknowledges that it is not relying on the advice of GHS for tax, legal, or accounting matters, it is seeking and will rely on the advice of its own professionals and advisors for such matters.

(Rec. Doc. 43-2, p. 10).

5

which their attorneys state that they met with a member of Petaquilla's board of directors on March 7, 2012 in New Orleans, at which time the director discussed confidential information related to the Transaction. (Rec. Doc. 43, p. 8; Rec. Doc. 43-1, p. 4).

Petaquilla has not presented the Court with any evidence to refute Jones Walker's contentions that Petaquilla had hired Jones Walker as legal counsel in connection with the Transaction. Nor does Petaquilla present any evidence to establish its allegations that GHS engaged Jones Walker to serve as *its* legal counsel for the Transaction. In an attempt to support this unsound allegation, Petaquilla simply presents a number of entries from Jones Walker's invoices which state that Jones Walker worked on several occasions with GHS while performing its services related to the Transaction. (Rec. Doc. 34-1, p. 4-6). However, this evidence does not prove that Jones Walker was hired by GHS. Instead, as clarified by Jones Walker, these entries merely demonstrate the nature of high bond yield transactions, in that they require legal counsel for the issuer of the bond, in this case Jones Walker, and the placement agent, in this case GHS, to work closely together to negotiate agreements. (Rec. Doc. 43, p. 8-9). In light of this evidence,

the Court finds that contrary to Petaquilla's allegations, Jones Walker was not counsel for GHS, and instead was directly hired by Petaquilla as legal counsel in relation to the Transaction.

Having clarified the nature of the relationship between Petaquilla and Jones Walker, the Court may now turn to a discussion regarding whether Petaquilla has proven that either a mandatory or discretionary stay of this matter is warranted.

### A. **Mandatory Stay**

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under the agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. This provision is mandatory, and demands a stay of legal proceedings "whenever the issues in a case are within the reach of an arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (citing *Midwest Mech. Contractors, Inc. v. Commonwealth Costr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986)). When these circumstances are present, a district court "has no discretion under section 3 to

deny the stay." *Id.* (quoting *Midwest Mech. Contractors*, 801 F.2d at 751) (internal quotations omitted).

The first issue the Court must address in determining whether the mandatory stay provision applies, is whether Petaquilla, the defendant in this matter and a signatory to the arbitration agreement with GHS, may invoke the provision against Jones Walker, the plaintiff, who is a non-signatory to the arbitration agreement. While the parties dispute the nature of the relationship between them, there is no question that Jones Walker was not a party to the arbitration agreement with GHS.

Historically, invocation of the mandatory stay provision was limited to signatories of the arbitration agreement and was not effective against any nonsignatory parties present in the lawsuit. *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) (holding that the mandatory stay provision "applies only to parties to the arbitration agreement"); *In the Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 ("[t]he mandatory stay provision of the Act does not apply to those who are not contractually bound by the arbitration agreement."). However, in recent years, courts have expanded the applicability of the mandatory stay provision. For instance, in *Waste Management, Inc. v. Residuous Industriales Mutliquim, S.A. de C.V.*, 372 F.3d

8

339, the Fifth Circuit held that the mandatory stay provision could be invoked by a nonsignatory to an arbitration agreement. 372 F.3d 339, 342 (5th Cir. 2004) (interpreting the mandatory stay provision "to make clear that any of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement.").

Jones Walker argues that despite the apparent extension of the mandatory stay provision, this Court has never permitted a signatory defendant to invoke the provision against a nonsignatory plaintiff. Plaintiff has not provided the Court with – nor is the Court aware of – any cases within this Circuit in which a court has permitted a signatory defendant to invoke a mandatory stay against a nonsignatory plaintiff. In fact, the exact opposite appears to have occurred. In *Vallejo v. Garda CL Southwest, Inc.*, the Southern District of Texas refused to permit a signatory defendant to invoke the mandatory stay provision against a nonsignatory plaintiff. No. H-12-0555, 2013 WL 6190175, at *5-6 (S.D. Tex. Nov. 26, 2013). Finding that the language and policy of Section 3 did not permit for such expansion, the court reasoned as follows:

> [L]itigation between a plaintiff-nonsignatory and a
> defendant-signatory does not undermine the defendant's

> right to arbitration when the plaintiff's claims are
> separate from the claims being arbitrated, even if the
> subject matter of the claims is similar. And allowing
> a defendant-signatory to invoke the FAA's mandatory
> stay against a plaintiff-nonsignatory creates the
> possibility that the plaintiff-nonsignatory's ability
> to assert its claims will be delayed "depending on the
> fortuity of whether there happens to be other parties
> … [that] have agreed to arbitrate a different claim."

*Id*. at *6 (quoting *Mendez v. Puerto Rican Int'l Cos., Inc*., 553
F.3d 709, 712 (3d Cir. 2009)).

Even considering that Petaquilla would be eligible to
invoke the mandatory stay provision, it has failed to show that
it would be entitled to the relief provided by Section 3. In
*Waste Management*, the Fifth Circuit articulated several factors
that courts must consider in determining whether a nonsignatory
may invoke the mandatory stay provision:

> 1) the arbitrated and litigated disputes must involve
> the same operative facts; 2) the claims asserted in
> the arbitration and litigation must be "inherently
> inseparable"; and 3) the litigation must have a
> "critical impact on the arbitration."

*Waste Mgmt*., 372 F.3d at 343 (citing *Hill v. GE Power Systems,
Inc*., 282 F.3d 343, 347 (5th Cir. 2002); *Harvey v. Joyce*, 199
F.3d 790, 795 (5th Cir. 2000)).

Petaquilla fails to satisfy the first factor, as the
operative facts forming the basis of the present litigation and
the GHS arbitration, while similar, are not the same. The two

matters concern two completely independent contractual breaches by Petaquilla. While both contracts, the Engagement Letter between Petaquilla and GHS and the contract for legal representation between Petaquilla and Jones Walker, concern the Transaction, they are between entirely distinct parties with entirely distinct terms. While the most general factual basis for these claims is similar, on two separate occasions, Petaquilla failed to pay two separate amounts to two separate companies. Thus, the Court does not find the operative facts to be the same in both matters, and the first factor weighs against a mandatory stay.

Considering the second factor, Petaquilla has failed to show that the claims in the present litigation and the GHS arbitration are "inherently inseparable." In the present matter, Jones Walker, on behalf of itself only, is seeking damages for unpaid attorney's fees incurred in providing services to Petaquilla regarding the Transaction. This claim is entirely distinct from that forming the basis of the GHS arbitration, in which GHS is seeking all reasonable fees and expenses incurred in relation to the Transaction, including attorney's fees of its only legal counsel, Proskauer. Despite Petaquilla's baseless assertions, it has failed to show that GHS is seeking attorney's

fees on behalf of Jones Walker, and the record provides no basis for this. As such, despite similar factual backgrounds, the claims involved in the two matters are not the same, and this second factor also weighs against a mandatory stay.

Finally, Petaquilla has failed to show any "critical" impact the present litigation may have on the GHS arbitration. It is not sufficient for Petaquilla to show that the present litigation would affect the GHS arbitration. Instead, the main issue for the Court to consider is whether "proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Mgmt.*, 372 F.3d at 343. While the Court recognizes the factual similarities between the two matters, Petaquilla has failed to show that any impact this litigation will have on the GHS arbitration would be "critical." Despite the underlying fact patterns, the matters present independent issues and include two completely separate claims. Considering this, the Court agrees with the Court's reasoning in *Waste Management*, that:

> Even if the arbitrator would feel bound by the district court, the cases are sufficiently different that the arbitrator's fact-finding and legal rulings would not be obviated. And if no stay is granted, the arbitration and litigation would still progress on parallel tracks – potentially arriving at different results in terms of whether the particular defendant bears liability but not repeating each other.

*Id.* at 344.

Thus, even if Petaquilla, as a defendant signatory, could invoke the mandatory stay provision against Jones Walker, a plaintiff nonsignatory, it has failed to show that it satisfies the *Waste Management* factors. Accordingly, Section 3 does not mandate a stay of this litigation.

B. **Discretionary Stay**

Petaquilla next argues that even if the Court determines that the *Waste Management* factors are not strictly met, it should nonetheless exercise its discretion and stay this matter pending the GHS arbitration. Petaquilla maintains that even if the facts of the two matters are not considered "inherently inseparable," the issues and operative facts of both substantially overlap to such an extent as to warrant a discretionary stay.

When a mandatory stay pursuant to Section 3 is not warranted, "it will lie within the district court's discretion to stay the claims between the nonarbitrating parties pending outcome of the arbitration simply as a means of controlling its docket." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d at 755 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, n. 23, 103 S.Ct. 927 (1983)). However,

13

while the district court maintains such discretion to "regulate its case flow," it must act with caution so as not to abuse this discretion. *Cargill Ferrous Intern. v. M/V Anatoli*, 935 F.Supp. 833, 837 (E.D. La. 1996) (Feldman, J.) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 103 S.Ct. 927)). Accordingly, "the moving party bears a heavy burden to justify the stay." *Id*. A district court may exercise its discretion to impose a stay pending arbitration, even if the "operative facts are not identical and the claims are not inherently inseparable," as long as the facts and claims forming the basis for the arbitration and litigation proceedings "significantly overlap." *Suzlon Infrastructure, Ltd. v. Pulk*, No. H-09-2206, 2010 WL 3540951, at *8 (S.D. Tex. Sept. 10, 2010). The Court must also grant consideration to both the benefits to the court and the parties, as well as any hardship posed to the non-moving party by the imposition of the stay. *See Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations*, LLC, No. 12-2183, 2013 WL 2903083 (E.D. La. June 12, 2013) (Feldman, J.) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 57 S.Ct. 163 (1936)).

In support of its argument seeking a discretionary stay, Petaquilla requests that the Court follow Judge Feldman's decision in *Mosaic Underwriting Serv., Inc. v. Moncla Marine*

14

*Operations*, LLC, No. 12-2183, 2013 WL 2903083 (E.D. La. June 12, 2013) (Feldman, J.). In *Mosaic*, a plaintiff vessel owner had filed claims against both its primary and excess insurers, asserting numerous causes of action including negligence, conspiracy, and fraud, for their conduct pursuant to relevant insurance policies regarding the sinking of one of the plaintiff's vessels. *Id*. at *1-2. One of the primary insurers invoked an arbitration agreement, compelling arbitration, while claims against the excess insurer proceeded to litigation before this court. *Id*. at *2. Plaintiff then sought a stay of the proceedings against the excess insurer pending resolution of the arbitration. *Id*. The Court first determined, after consideration of the *Waste Management* factors, that a mandatory stay pursuant to Section 3 was not warranted, because the claims against the excess and primary insurers were brought pursuant to separate insurance policies. *Id*. at *6-7. However, the Court determined that the operative facts overlapped extensively, that the claims were intertwined strongly, and that resolution of issues in the litigation would substantially affect the arbitration. *Id*. Accordingly, the Court issued a discretionary stay of the litigation pending the resolution of the arbitration. *Id*.

As noted by Jones Walker, the present circumstances differ greatly from those present in *Mosaic*. Not only do the claims against Petaquilla brought by Jones Walker and GHS involve two entirely different contracts, but the resolution of any issues in the present litigation would not have the same impact on the GHS arbitration as was present in *Mosaic*. As determined above, despite Petaquilla's blanket assertions, GHS is not seeking attorney's fees on behalf of Jones Walker. Instead, while GHS is seeking attorney's fees incurred by Proskauer related to the Transaction, Jones Walker is seeking attorney's fees on its own behalf for similar services. Therefore, the resolution of issues involving Jones Walker's ability to recover attorney's fees in the present matter will not have a controlling effect on the GHS arbitration, and will have no direct impact on any of the primary issues involved in the arbitration.

Moreover, the Court cannot ignore the detrimental impact the granting of a discretionary stay in this matter would have on Jones Walker. As noted by Jones Walker, Petaquilla's conduct has already extensively delayed litigation of this matter,[2] and

---

[2] Jones Walker addresses in its *Opposition* that Petaquilla has already delayed litigation of this matter by failing to answer Jones Walker's complaint until after the clerk issued an entry of default and Jones Walker requested a default judgment in its favor, by refusing to engage in discovery until the Court ruled on Petaquilla's motion to dismiss for lack of personal

the granting of a stay pending what could be a lengthy arbitration, would further deprive Jones Walker of a speedy resolution of its claims.

Because Petaquilla has failed to show that either a mandatory or discretionary stay of this matter is warranted pending the resolution of the GHS arbitration, this matter shall not be stayed.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Petaquilla's *Motion to Stay Pending Arbitration* (**Rec. Doc. 34**) is **DENIED**.

New Orleans, Louisiana this 16th day of June, 2015.

CARL J. BARBIER

UNITED STATES DISTRICT JUDGE

---

jurisdiction, and by refusing to comply with discovery until Jones Walker filed a motion to compel. (Rec. Doc. 43, p. 1).